UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**JAMES M CRITTENDEN** and<br>**BETTY A CRITTENDEN**,<br><br>Debtors. | Case No. **12-60165-13** |

# MEMORANDUM of DECISION

At Butte in said District this 27th day of April, 2012.

In this Chapter 13 bankruptcy, after due notice, the Court held a hearing on April 24, 2012, in Billings on the Trustee's Motion to Convert filed March 12, 2012, at docket entry no. 28, the Trustee's Motion to Convert filed March 30, 2012, at docket entry no. 36, and Debtors' Motion to Dismiss filed April 19, 2012, at docket entry no. 67. The Chapter 13 Standing Trustee, Robert G. Drummond of Great Falls, Montana appeared at the hearing in support of his motions to convert. Robert L. Stephens of Billings, Montana made a special and limited appearance on behalf of Debtors to defend the Trustee's motions to convert and prosecute Debtor's motion to dismiss.[1] Debtors James Crittenden ("James"), Debtor Betty Crittenden ("Betty"), Steve Heimbichner, and Evelyn Heimbichner testified. The Trustee's Exhibits 1 through 4 were admitted into evidence without objection. At the conclusion of the hearing, the Court took the matter under advisement. This Memorandum of Decision includes the Court's

---

[1] Juliane E. Lore of Billings, Montana also appeared at the hearing on behalf of Debtors, but was permitted to withdraw as Debtors' counsel prior to the hearing on the motions to convert and motion to dismiss.

1

findings of fact and conclusions of law.

## FACTS

In approximately June of 2006, James and Betty started a used car business, Payless Auto Sales, Inc.  Payless Auto Sales, Inc. was involuntarily dissolved in 2009.  Betty left the auto sales business in 2009 and James took on two new partners.  At that time, James intended to convert Payless Auto Sales to a limited liability company, but that never happened.  James' could not state what type of entity Payless Auto Sales was after 2009, but testified income from the auto sales business flowed through to the individual owners' tax returns.  Business declined and James discontinued operation of Payless Auto Sales in October of 2011.  All that is left of Payless Auto Sales at this time is miscellaneous items such as filing cabinets, desks, a broken laptop computer and cleaning supplies.

Debtors filed a voluntary Chapter 13 bankruptcy petition on February 13, 2012, with the hopes of getting out from under their debt.  Based upon the testimony, it appears Debtors' primary goal is to save their home, which sits on 20 acres.  James concedes that Debtors did not and still do not have the ability to repay their debt.  Until Debtors filed bankruptcy, they had not made a payment on their home since July of 2011.  Debtors have made their post-petition mortgage payments to the first position lienholder.  James testified that the first position lienholder will permit a modification of that obligation.  James believes Debtors could bring the second mortgage current.

Debtors' bankruptcy petition was accompanied by schedules and statement of financial affairs ("SOFA").  In their original Schedule A, Debtors list their home, mineral rights and a rental property located in Billings.  Debtors list the value of their home at $340,000, the value of

2

the mineral rights as unknown and the value of the rental property as $70,000. Betty owns the mineral rights free and clear of any liens and Debtors assert on Schedule A that the they receive "[n]o production or royalties" from the mineral rights. The first and second mortgages on Debtors' home total $376,000; the first and second mortgages on the rental property total $155,000.

Debtors list various items of property on Schedule B, including a 1984 Chevy truck valued at $100, a 2005 GMC Envoy valued at $3,400, a 1996 GMC Yukon valued at $1,075 and a 2001 GMC Jimmy valued at $2,500. Debtors disclose that the 2001 GMC Jimmy is "jointly titled with grown daughter[,] and that Debtors do not have possession of the 2001 GMC Jimmy, did not pay any purchase money for the vehicle and do not pay the costs associated with operating the 2001 GMC Jimmy. Debtors owe $7,416 on the 2005 GMC Envoy.

On Schedule C, Debtors claim a $500,000 homestead exemption, even though the allowable homestead exemption in Montana is $250,000.[2] Debtors also claim a $2,500 motor vehicle exemption in the 2001 GMC Jimmy, even though said vehicle is jointly owned with Debtors' daughter.

Debtors list the Internal Revenue Service and the Montana Department of Revenue as creditors on Schedule E, but list "$0.00" as the amount owed. The Internal Revenue Service filed an amended proof of claim on April 5, 2012, asserting a total claim of $27,031.89, of which $19,372.27 is classified as being entitled to priority under 11 U.S.C. § 507(a). Per an amended Schedule F filed February 17, 2012, Debtors list unsecured debt totaling $224,332.00. On

---

[2] On February 16, 2012, Debtors, in response to an objection by the Trustee, amended their Schedule C to reduce their claimed homestead exemption to $250,000.

Schedule G, Debtors disclose that Betty's mineral rights are subject to a 5-year lease with Wasaabee Energy, Inc. The lease agreement with Wasaabee Energy, Inc. was entered into on October 27, 2011. On Schedule I, Debtors assert their combined monthly income is $6,600. Debtors amended their Schedule I on February 22, 2012, reducing their combined average monthly income to $4,955. Per Schedule J, Debtors' average monthly expenses total $6,013. Per an amended Schedule J filed February 22, 2012, Debtors' average monthly expenses were reduced to $5,443.00. While Debtors' amended Schedules I and J show that Debtors' expenses exceed their income by $488.00 per month, Debtors' amended Statement of Current Monthly Income shows that Debtors' annualized current monthly income exceeds the applicable median income for a family of 4 living in Montana and that Debtors' monthly disposable income is $45.66.

In response to Question 1 of the SOFA, Debtors assert that their income from employment or operation of a business was $46,512 in 2009; $47,302 in 2010; and $45,064 in 2011. In response to Question 2 of the SOFA, Debtors disclose they also received rental income of $11,789 in 2010 and received a one time oil and gas lease payment of $22,500 from Wasaabee Energy. Debtors also list five lawsuits on their SOFA, four of which are still pending and one in which default judgment was entered in January of 2012.

Debtors' 341(a) meeting of creditors was held March 12, 2012. At that time, Debtors represented to the Trustee that their schedules were complete and accurate.

The Trustee filed his first motion to convert on March 12, 2012, on grounds Debtors had failed to file all tax returns due through the year 2010 as required by 11 U.S.C. § 1308. The Trustee filed his second motion to convert on March 30, 2012, seeking conversion because

Debtors had failed to commence making payments as required by 11 U.S.C. § 1326. The Trustee also requests, in an objection to confirmation filed March 15, 2012, that this case be converted to Chapter 7. It appears from the record that Debtors have filed their 2010 tax returns but not their 2011 tax returns. As a result of an extension, Debtors have until October of 2012 to file their 2011 tax returns. Debtors have not commenced making their Chapter 13 plan payments.

Sometime after the 341(a) meeting of creditors, the Trustee discovered that Debtors failed to list an unsecured creditor on Schedule F and had also failed to list joint ownership in three additional motor vehicles. Debtors thus amended their Schedules A, B, E and F on April 13, 2012. Per the amended Schedule A, Debtors assigned a value of $19,481 to the mineral rights. Per the amended Schedule B, Debtors disclosed joint ownership in a 2003 Kia Sedona, a 2003 Pontiac Aztec and a 1993 Chevy Beretta, and added a lien held by Payless Auto Sales against a 1998 Ford Windstar. Debtors amended their Schedule E to show priority debt of $19,372.27 and unsecured debt of $7,569.62 owed to the Internal Revenue Service. Debtors amended their Schedule F to add a debt of $2,200 owed to FM Performance and a debt of $10,000 owed to St. Paul Trust/Evelyn Heimbichner. Debtors again amended their Schedule B on April 15, 2012, and April 18, 2012, to correct other minor errors.

James testified at the hearing that the amount of the lease payment received from Wasaabee Energy, Inc. in December of 2011 was actually $26,000, and not $22,500. Debtors have not amended their schedules or SOFA to reflect the correct amount of the payment from Wasaabee Energy, Inc. James did not know how Debtors arrived at a value of $19,481 for the mineral rights on the amended Schedule B, and continued to maintain the mineral rights have no value because the lease was paid for 5 years. Betty also did not know where the value of the

5

mineral rights came from, but stated if the case were converted to a Chapter 7, Debtors did not want to give up the mineral rights and would seek to purchase them from a Chapter 7 trustee.

James testified Debtors did not originally list the 2003 Pontiac Aztec as an asset because the car was jointly owned with one of Debtors' grown children, and Debtors simply did not recall that their name was still on the title. Debtors did not list the 2003 Kia Sedona as an asset because it had been junked over a year prior to Debtors' bankruptcy petition date. Similarly, Debtors did not list the 1993 Chevy Beretta as an asset because it had been sold for parts about 8 years ago.

Debtors did not list, in either their original Schedule F or their first amended Schedule F, the obligation owed to St. Paul Trust/Evelyn Heimbichner because Debtors were friends with the Heimbichners and felt a moral obligation to repay that debt. Finally, at no time did Debtors disclose payments they were receiving from Square One Finance. Square One Finance was a company that provided financing for Payless Auto Sales. On December 1, 2010, James requested that when Square One Finance made payments to Payless Auto Sales that it make the check payable to "Jim Crittenden." The request specifically stated that "[a]ll checks written to Jim Crittenden are for the purpose of payment of monies owed to Payless Auto Sales and satisfy contractual obligations between Payless Auto Sales and Square One Finance." After Payless Auto Sales ceased doing business and prior to Debtors' petition date, Debtors received payments totaling $1,607.30 from Square One Auto Finance. Post-petition, Debtors have received payments totaling $388.38 from Square One Auto Finance. Debtors failed to disclose any of the foregoing payments in any of their bankruptcy documents. James testified that Square One Finance still owes him about $400 to $500. The foregoing sum is not listed as a asset in Debtors' schedules.

Debtors filed their motion to dismiss on April 19, 2012. Debtors assert in their motion that they are seeking dismissal of this case because they cannot adequately fund a Chapter 13 plan given the amount of priority debt owed the Internal Revenue Service. Debtors oppose conversion of this case to Chapter 7, arguing they can still keep their home and mineral rights if the case is dismissed. The Trustee counters that Debtors' bad faith conduct precludes dismissal and justifies conversion of this case to Chapter 7.

## APPLICABLE LAW and DISCUSSION

Conversion or dismissal of this case is governed by 11 U.S.C. § 1307, which reads in relevant part:

> (b) On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this section is unenforceable.
>
> (c) . . . [O]n request of a party in interest, or the United States trustee and after notice and a hearing, the court may convert a case under [chapter 13] to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . .

*See Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 771 (9th Cir. 2008).

In *Rosson* the Ninth Circuit noted that the conflict between § 1307(b) and (c) divided courts, with some courts holding that debtors had an absolute right to dismiss while others held that bankruptcy courts had the power to convert a case under § 1307(c) even when debtors requested dismissal under § 1307(b). *Rosson*, 545 F.3d at 771. That conflict is now resolved. The right to dismiss under 11 U.S.C. § 1307(b) is no longer absolute, but rather, is qualified by an implied exception for bad-faith conduct or abuse of the bankruptcy process. *Rosson*, 545 F.3d at 767, 773-74; *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 127 S.Ct. 1105, 166

L.Ed.2d 956 (2007).

The Court in *Marrama* did not decide with precision what qualifies as bad faith, but emphasized that the debtor's conduct must in fact be atypical. *Rosson,* 545 F.3d at 773, quoting *Marrama,*127 S.Ct. at 1112 n.11. The Ninth Circuit in *Rosson* cited its decisions in *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1222-23 (9th Cir.1999) and *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994) (per curiam), that a finding of bad faith is a finding of fact reviewable for clear error. *Rosson*, 545 F.3d at 774.

In determining whether a petition or plan is filed in good faith the court must review the "totality of the circumstances." *Leavitt* , 171 F.3d at 1224-25; *In re Gress*, 257 B.R. 563, 567, 19 Mont. B.R. 30, 34 (Bankr. D. Mont. 2000); *In re Eisen*, 14 F.3d 469, 470 (9th Cir. 1994). In affirming this Court's dismissal of a Chapter 13 case with prejudice, the district court in this district has adopted the *Leavitt* "totality of the circumstances" list of factors. *In re Kreilick*, 18 Mont. B.R. 419, 421-22 (D. Mont. 2000); *In re Hungerford*, 19 Mont. B.R. 103, 130 (Bankr. D. Mont. 2001).

A finding of bad faith does not require fraudulent intent by the debtor. *Hungerford*, 19 Mont. B.R. at 130; *Gress*, 257 B.R. at 568:

This Court noted in *Gress*:

A finding of bad faith does not require fraudulent intent by the debtor.

> [N]either malice nor actual fraud is required to find a lack of good faith. The bankruptcy judge is not required to have evidence of debtor ill will directed at creditors, or that debtor was affirmatively attempting to violate the law-malfeasance is not a prerequisite to bad faith.

*In re Powers*, 135 B.R. 980, 994 (Bankr.C.D.Cal.1991) (relying on *In re Waldron*, 785 F.2d 936, 941 (11th Cir.1986)).

8

> The determination of whether a debtor filed a petition or plan in bad faith so as to justify dismissal for cause is left to the sound discretion of the bankruptcy court. *In re Leavitt*, 171 F.3d at 1222-23; *In re Marsch*, 36 F.3d 825, 828 (9th Cir.1994); *Greatwood v. United States (In re Greatwood)*, 194 B.R. 637, 639 (9th Cir. BAP 1996), aff'd, 120 F.3d 268 (9th Cir.1997).
>
> The same factors govern whether Gress filed his petition or his plans in bad faith. *In re Eisen*, 14 F.3d at 470; *In re Leavitt*, 171 F.3d at 1224.

257 B.R. at 568; *Greatwood v. United States (In re Greatwood)*, 194 B.R. 637, 639 (9th Cir. BAP 9th Cir.1996), *aff'd*, 120 F.3d 268 (9th Cir.1997). Thus, this Court has the discretion to dismiss this case, or to convert the case to Chapter 7 as the Trustee requests.

In *Leavitt*, 171 F.3d at 1224, the Ninth Circuit held that in determining whether a chapter 13 plan was proposed in good faith, a bankruptcy court should consider (1) whether the debtor misrepresented facts in his or her petition or plan, unfairly manipulated the Code, or otherwise filed his or her petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor intended to defeat state court litigation; and (4) whether egregious behavior is present. *See also In re Cavanagh*, 250 B.R. 107, 114 (9th Cir. BAP 2000).

After considering the *Leavitt* factors and the evidence in this case, the Court concludes that conversion of the case to Chapter 7 is in the best interests of creditors and the estate. The first *Leavitt* factor is whether the debtors misrepresented facts in their petition or plan, unfairly manipulated the Code, or otherwise filed their petition or plan in an inequitable manner. The Court finds that the Trustee has satisfied his burden of proof on the first *Leavitt* factor. The Trustee takes issue with the fact that Debtors failed to disclose three motor vehicles in their schedules. While Debtors' failure to list the vehicles is not condoned, the Court does not issue its rulings in a vacuum and can understand why the vehicles were omitted. In fact, the Court

9

finds that Debtors were justified in omitting the 1983 Beretta if it was indeed sold 8 years prior to Debtors' petition date.

More troubling to the Court is Debtors' complete failure to list the monies received and still owing from Source One Finance. Equally troubling is Debtors' admission that they purposely failed to disclose a creditor. Rule 1007(b), F.R.B.P., specifically requires debtors to file "schedules of assets and liabilities." Debtors' obligation to St. Paul Trust/Evelyn Heimbichner was a liability that was required to be disclosed. The amount owed from Source One Finance is an asset that Debtors' should have listed. Liberal amendment of schedules is allowed as a matter of course at any time before a case is closed under Rule 1009(a). *In re Michael*, 17 Mont. B.R. 192, 198 (9th Cir. 1998) (citing cases). However, amendment may be denied on a showing of a debtor's bad faith. *Id.*; *In re Magallanes*, 96 B.R. 253, 255-56 (9th Cir. BAP 1988). Debtors' failure to list all their assets and liabilities in their original schedules is not excused by their amendment, which was done only after the Trustee discovered the undisclosed assets and liabilities. Finally, it is clear that Debtors never had and still do not have the ability to fund a Chapter 13 plan. The first *Leavitt* factor shows bad faith by the Debtors in filing their Chapter 13 bankruptcy petition.

The second *Leavitt* factor is the debtor's history of filings and dismissals. The Court's records reflect that Debtors filed a Chapter 7 bankruptcy in July of 1996 and received a discharge of their debts on October 17, 1996.[3] Given the length of time between the prior filing and this filing, the Court finds that the second *Leavitt* factor does not weigh in favor of or against a

---

[3] Debtors do not disclose the 1996 bankruptcy on their petition, but instead disclose a bankruptcy case filed on June 1, 1988.

finding of bad faith.

The third *Leavitt* factor is whether the debtors intended to defeat state court litigation. Debtors have four lawsuits pending against them. Nothing, however, expressly exists in the record upon which the Court can make a finding of bad faith under the third *Leavitt* factor that Debtors intended to defeat state court litigation.

The final *Leavitt* factor is whether egregious behavior is present. The Trustee has shown egregious behavior by Debtors in at least two areas. The first is Debtors' knowing failure to list a debt. Only an "honest but unfortunate" debtor is entitled to a "fresh start" under the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The Court finds that Debtors' failure to list a creditor, who happens to a close friend of James, constitutes abuse of the bankruptcy process.

Second, the Court has a strong inclination that Debtors seek to use the bankruptcy process to discharge the debts they choose, while protecting their home and most importantly, keeping a potentially valuable asset from the reaches of their creditors. James testified that Chase Mortgage was willing to modify its mortgage with Debtors. Thus, conversion of this case to Chapter 7 should not impact Debtors' ability to keep their home. However, pursuant to a letter dated October 27, 2011, Debtors received an Oil and Gas lease from Wasaabee Energy, Inc., along with a draft payment in the amount of $22,500. The letter recites that the draft is for 40 calendar days from the date Wasaabee Energy, Inc. receives the notarized Oil and Gas Lease from Debtors. That date was arguably sometime in December of 2011. The evidence suggests that Debtors secured that money and then filed their bankruptcy petition.

Based upon that Lease, James contends Betty's mineral rights are valueless. However,

Betty was very clear that she does not want to give up her mineral rights. Debtors' initial failure to value the mineral rights and Betty's clear intent to retain the mineral rights belies James' contention that the mineral rights are valueless. Given the current oil boom in northeastern Montana, it may be that Betty's mineral rights are very valuable. Thus, the Court finds that the fourth *Leavitt* factor weighs in the Trustee's favor.

Two of the four *Leavitt* factors show bad faith by the Debtors in filing their Chapter 13 petition. The Court finds that Debtors' conduct satisfies the *Marrama* requirement that it be "atypical." 127 S.Ct. at 1112 n.11; *Rosson*, 545 F.3d at 773. What remains to be determined is the remedy.

"A dismissal with prejudice bars further bankruptcy proceedings between the parties and is a complete adjudication of the issues." *Leavitt*, 171 F.3d at 1223-24; *In re Tomlin ("Tomlin")*, 105 F.3d 933, 936-37 (4th Cir. 1997). In *Tomlin* the United States Court of Appeals for the Fourth Circuit describes a dismissal order that bars subsequent litigation as a "severe" and "drastic" sanction which is limited to "extreme situations": "Generally, only if a debtor engages in egregious behavior that demonstrates bad faith and prejudices creditors – for example, concealing information from the court, violating injunctions, or filing unauthorized petitions – will a bankruptcy court forever bar the debtor from seeking to discharge then existing debts." *Tomlin*, 105 F.3d at 937 (citing cases).

The Trustee, however, seeks conversion to Chapter 7 and not dismissal. All matters considered, the Court finds that it is in the best interests of creditors to convert the case to Chapter 7. For the reasons discussed above, the Court will enter a separate order providing as follows:

IT IS ORDERED Trustee's Motion to Convert filed March 12, 2012, at docket entry no. 28, and the Trustee's Motion to Convert filed March 30, 2012, at docket entry no. 36, are GRANTED; and this case is converted to Chapter 7 of the Bankruptcy Code.

IT IS FURTHER ORDERED that Debtors' Motion to Dismiss filed April 19, 2012, at docket entry no. 67 is DENIED.

      BY THE COURT

      */s/ Ralph B. Kirscher*

      HON. RALPH B. KIRSCHER
      U.S. Bankruptcy Judge
      United States Bankruptcy Court
      District of Montana